**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CLARENCE DELANEY, JR.,

                         Plaintiff,                    No. 1:18-CV-1193
                                                     (DNH/CFH)

       v.

CITY OF ALBANY, et al.,

                         Defendants.

_____

**APPEARANCES:**                          **OF COUNSEL:**

Clarence Delaney Jr.
17-A-0236
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**

**I. In Forma Pauperis Application**

       The Clerk has sent to the Court an amended complaint, together with an

application to proceed in forma pauperis ("IFP"), filed by plaintiff pro se Clarence Delaney

Jr.  Dkt. Nos. 4, 8 ("Am. Compl.").  After reviewing plaintiff's IFP Application, the Court

finds that he may properly proceed IFP.  See Dkt. No. 4.[1]

_____

[1]  Plaintiff is advised that, despite his IFP status, he will still be required to pay any fees he incurs
in this action, including copying fees and witness fees.

## II. Initial Review[2]

## A. Standard of Review

Section 1915 of Title 28 of the United States Code directs that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his or her complaint before permitting him or her to proceed with the action.

Where, as here, the plaintiff proceeds pro se, "the court must construe his [or her] submissions liberally and interpret them to raise the strongest arguments that they suggest." Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks omitted); see also Hernandez v. Coughlin, 18 F.3d 133, 136 (2d Cir. 1994). However, this does not mean the Court is required to accept unsupported allegations devoid of sufficient facts or claims. Pleading guidelines are provided in the Federal Rules of Civil Procedure ("Fed R. Civ. P"). Specifically, Rule 8 provides that a pleading which sets forth a clam for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See FED. R. CIV. P. 8(a)(2). "The purpose . . . is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate

---

[2] Any unpublished decisions cited within this Report-Recommendation and Order have been provided to plaintiff pro se.

defense and determine whether the doctrine of res judicata is applicable." Flores v.

Graphtex, 189 F.R.D. 54, 54 (N.D.N.Y. 1999) (internal quotation marks and citations

omitted).  Rule 8 also requires the pleading to include:

> (1) a short and plain statement of the grounds for the court's
> jurisdiction . . .;
>
> (2) a short and plain statement of the claim showing that the
> pleader is entitled to relief; and
>
> (3) a demand for the relief sought . . . .

FED. R. CIV. P. 8(a). Although "[n]o technical form is required," the Federal Rules make

clear that each allegation contained in the pleading "must be simple, concise, and direct."

Id. at 8(d).  Ultimately, the plaintiff must plead "enough facts to state a claim to relief that

is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

A complaint that fails to comply with the pleading requirements "presents far too a

heavy burden in terms of a defendant['s] duty to shape a comprehensive defense and

provides no meaningful basis for the Court to assess the sufficiency of their claims."

Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held,

"[w]hen a complaint does not comply with the requirement that it be short and plain, the

court has the power, on its own initiative . . . to dismiss the complaint."  Salahuddin v.

Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is

usually reserved for those cases in which the complaint is so confused, ambiguous,

vague, or otherwise unintelligible that its true substance, if any, is well disguised."  Id.

(citations omitted).

**B. Plaintiff's Complaint**

Plaintiff seeks to bring this action pursuant to 42 U.S.C. § 1983 alleging that defendants the City of Albany and various members of the Albany City Police Department violated his constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments. See generally Am. Compl. Plaintiff contends that on August 9, 2018, Detective ("Det.") Adam Brace, Det. DiGiuseppe, and several other members of the Albany City Policy Department "ambushed" him with their guns drawn while he was walking in the City of Albany. Id. at 4. Det. DiGiuseppe "threw [plaintiff] hard against the patrol car and handcuffed [him] around and behind [his] back." Id. In applying the handcuffs, Det. DiGiuseppe injured plaintiff's right arm/elbow, which was already disabled due to a degenerative joint disease. Id. Plaintiff informed Det. DiGiuseppe that he was aggravating plaintiff's disability. Id. Plaintiff also contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Id. at 6. Plaintiff alleges that Det. DiGiuseppe then emptied plaintiff's pockets, including over $170.00, and failed to return his possessions. Id. at 4.

Plaintiff alleges that he asked Det. Brace and Det. DiGiuseppe why he was being arrested, and Det. Brace informed him that power tools belonging to plaintiff's friend were stolen out of the friend's truck, and that they wanted to know where the tools were located. Am. Compl. at 5. Plaintiff contends that he was arrested for "two credit cards that [Det. DiGiuseppe] found[.]" Id. Plaintiff suggests that he has had prior negative interactions with Det. DiGiuseppe, and has previously filed complaints against him. Id. Plaintiff further contends that, in a written report to plaintiff's parole officer, Det. Brace lied

4

to plaintiff's parole officer and stated that plaintiff had been in possession of "makita drills that had been reported stolen."  Id.  Plaintiff contends that he suffered great physical pain and emotional distress as a result of the interaction.  See id. at 4, 5.

### C. Analysis

Plaintiff purports to set forth claims of excessive force, false arrest/imprisonment, defamation, intentional infliction of emotional distress ("IIED"), and official misconduct. See generally Am. Compl.  Section 1983 provides, in part:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . .

42 U.S.C. § 1983.  To set forth a cause of action under section 1983, a plaintiff must demonstrate that the alleged conduct was (1) "committed by a person acting under color of state law"; and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States."  Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (internal quotation marks omitted)).  "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  Wyatt v. Cole, 504 U.S. 158, 161 (1992).

The Supreme Court of the United States has found that "the under-color-of-state-law element of § 1983 excludes from its reach merely private

5

conduct, no matter how discriminatory or wrongful." Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) (citation and internal quotation marks omitted). Therefore, a plaintiff must establish that the defendant was either a state actor or a private party acting under color of state law. See Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 323 (2d Cir. 2002); see also United States v. Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 941 F.2d 1292, 1295-96 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'"). A private party engages in state action when they are found to be a "willful participant in joint activity with the State or its agents." Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970) (citing United States v. Price, 383 U.S. 787, 794 (1966)). "Conduct that is ostensibly private can be fairly attributed to the state only if there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." White v. Moylan, 554 F. Supp. 2d 263, 267 (D. Conn. 2008) (citation omitted).

### 1. Official Capacity Claims

To the extent that plaintiff seeks to bring his claims against defendants Det. Brace, Det. DiGiuseppe, and the John Doe defendants in their official capacities, this District has held that "'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant.'" Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (N.D.N.Y. Oct. 25, 1999) (citing

Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991)).  This is because "[t]he real party in interest in an official capacity suit is the governmental entity and not the named official."  Booker v. Bd. of Educ., Baldwinsville Cent. Sch. Dist., 238 F. Supp. 2d 469 (N.D.N.Y. 2002) (citing Union Pac. R.R. v. Vill. of S. Barrington, 598 F. Supp. 1285 (N.D. Ill. 1997).  Moreover, this District has held that "'claims against municipal officers in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant."  Wallikas v. Harder, 67 F. Supp. 2d 82, 83 (1999) (citing Busby v. City of Orlando, 931 F.2d 764, 766 (11th Cir. 1991)).

Because plaintiff appears to have commenced this action against the City of Albany and the individual defendants in their official capacities, it is recommended that plaintiff's Monell claims against the Det. Brace., Det. DiGiuseppe, and the John Doe defendants be dismissed with prejudice.  Insofar as plaintiff attempts to bring the remaining claims in his amended complaint against the individual defendants in their official capacities, it is recommended that such claims be dismissed with prejudice because "[n]either a state nor one of its agencies nor an official of that agency sued in his or her official capacity is a 'person' under § 1983."  Spencer v. Doe, 139 F.3d 107, 111 (2d Cir. 1998) (citations omitted).

## 2. False Imprisonment and False Arrest

In Heck v. Humphrey, the Supreme Court of the United States created a jurisdictional prerequisite to civil suits brought under 42 U.S.C. § 1983:

[i]n order to recover damages for harm caused by actions whose

7

> unlawfulness would render a conviction or sentence invalid, a §
> 1983 plaintiff must prove that the conviction or sentence has
> been reversed on direct appeal, expunged by executive order,
> declared invalid by a state tribunal authorized to make such
> determination, or called into question by a federal court's
> issuance for a writ of habeas corpus.  A claim for damages
> bearing that relationship to a conviction or sentence that has *not*
> been so invalidated is not cognizant under § 1983.

512 U.S. 477, 486-87 (1994) (emphasis in original).

In a February 13, 2019 letter to the Court, plaintiff stated that his "criminal case in Albany City/Police Court related to this case and the parties involved has been adjudicated and resolved/completed[.]" Dkt. No. 11 at 1.  Plaintiff further stated that he "felt that [he] should let the Court know due to the fact that one of [his] causes of action is for false arrest/false imprisonment."  Id.  Although plaintiff appears to contend that the criminal case associated with this action has been resolved, he does not establish that a "conviction or sentence has been reversed . . . , expunged . . . , [or otherwise] declared invalid[.]"  Heck, 512 U.S. at 486-87.  Moreover, plaintiff's complaint and submissions  are unclear as to the nature of the charges, if any, that were filed against him in connection with the incident in question.  Plaintiff contends that he was arrested for charges unrelated to the reason for defendants' initial stop, but does not identify those charges. See Am. Compl. at 5.  Plaintiff seems to suggest that he was arrested and potentially charged with possessing stolen credit cards and/or power tools, but the amended complaint is unclear as to the disposition of those charges.  See id.  Thus, the undersigned is unable to determine whether his causes of action for false arrest and false imprisonment fall squarely within the ambit of Heck because it is unclear whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain

8

pending, or if they have been vacated, reversed, acquitted, or otherwise invalidated.

Thus, the undersigned cannot ascertain whether, if plaintiff's false imprisonment and

false arrest claims were to succeed, "he would necessarily call into question the validity of

the conviction he is challenging in this action." Godley v. Onondaga Cnty., No.

6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *5 (N.D.N.Y. Jan. 6, 2017) (citing

Duamutef v. Morris, 956 F. Supp. 1112, 1115-18 (S.D.N.Y. 1997) (dismissing § 1983

claims of malicious prosecution, false arrest, perjury, retaliation, and civil rights

conspiracy under Heck where the plaintiff's underlying conviction had not been

overturned)). "[B]ecause [p]laintiff has failed to show that his conviction has been

overturned . . . [,] his § 1983 claims [for false arrest and false imprisonment] are barred

under Heck unless and until such time as [p]laintiff's conviction is overturned or his

sentence is invalidated" or plaintiff otherwise demonstrates that his causes of action

would not otherwise render his conviction invalid. Godley, 2017 WL 2805162, at *6.

Accordingly, it is recommended that plaintiff's false imprisonment and false arrest causes

of action be dismissed without prejudice and with opportunity to amend to specify any

and all criminal charges brought against him in connection with the August 9, 2018

incident and whether a "conviction or sentence has been reversed . . . , expunged . . . ,

[or otherwise] declared invalid[.]" Heck, 512 U.S. at 486-87.


### 3. Defamation

Plaintiff contends that Det. Brace "committed libel and slander by charges that was

never committed by plaintiff." Am. Compl. at 7. Plaintiff further contends that Det.

DiGiuseppe "stated . . . [that] plaintiff possessed stolen credit cards . . . causing [ ] plaintiff to be arrested illegally." Id. Heck also applies to plaintiff's defamation claim. "Under New York law, '[d]efamation is the injury to one's reputation either by written expression, which is libel, or by oral expression, which is slander.'" Kennedy v. City of New York, No. 12 CIV. 4166 KPF, 2015 WL 6442237, at *12 (S.D.N.Y. Oct. 23, 2015) (quoting Lan Sang v. Ming Hai, 951 F. Supp. 2d 504, 517 (S.D.N.Y. 2013)). "Truth is an absolute defense to a civil defamation action." Beaver v. Franklin, No. 5:16-CV-1454 (BKS/ATB), 2016 WL 11265986, at *4 n.6 (N.D.N.Y. Dec. 16, 2016), report and recommendation adopted, 2017 WL 1378183 (N.D.N.Y. Apr. 14, 2017). Therefore, in order to sustain a cause of action for defamation, plaintiff must establish that the charges or statements made against him were false. See id. It is unclear as to what crimes plaintiff was charged with, whether plaintiff faced any conviction or sentence relating to the incident, whether any charges remain pending, or if any charges have been vacated, reversed, acquitted, or otherwise invalidated. Thus, truth of any alleged defamatory statement cannot be addressed until the status of any charges is known. It follows that the undersigned cannot assess whether, if plaintiff's defamation claim were to succeed, "he would necessarily call into question the validity of the conviction he is challenging in this action." Godley, 2017 WL 2805162, at *5. Moreover, the undersigned cannot surmise from the amended complaint if the alleged defamatory statement was published[3] to a third party,

_____

[3] "Under New York defamation law, 'publication is a term of art . . . . A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else.'" Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (quoting Ostrowe v. Lee, 256 N.Y. 36, 38 (1931)). A cause of action for slander also requires publication to a third party. See Kennedy, 2015 WL 6442237, at *12 ("A cause of action for slander requires (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning' the plaintiff, (v) made with the applicable level of fault

as required by New York law.  See Beaver, 2016 WL 11265986, at *4 n.6.

Accordingly, it is recommended that plaintiff's defamation cause of action be dismissed

without prejudice and with opportunity to amend to specify (1) the charges brought

against him and whether his  "conviction or sentence has been reversed . . ., expunged

. . ., [or otherwise] declared invalid"; and (2) whether the alleged defamatory statement

was published to a third party.  Heck, 512 U.S. at 486-87; see Beaver, 2016 WL

11265986, at *4 (noting that the Heck bar "would also apply to 'slander' and 'defamation

of character.'") (citing Xiang Li v. Shelhamer, No. 5:10-CV-801, 2012 WL 951550, at *4

(N.D.N.Y. Mar. 20, 2012) (concluding that the plaintiff's claims that the defendant

defamed him through statements made in his criminal proceeding that resulted in his

conviction are barred by Heck); Lane v. Papadimitrious, No. 6:10-CV-647, 2010 WL

2803468, at *1 (N.D.N.Y. July 14, 2010) (holding that the "plaintiff's claims in the nature of

perjury[ and] slander . . . necessarily implicate the validity of his conviction and are thus

barred under Heck [ ] until such time as the conviction may be vacated or otherwise

invalidated.").

### 4. Excessive Force

Plaintiff's assertion that Det. DiGiuseppe subjected him to excessive force during

the arrest is not barred by Heck, as "it would not implicate his judgments of conviction."

Palmenta v. Blank, No. 3:18-CV-1078 (SRU), 2018 WL 4516676, at *4 (D. Conn. Sept.

---

on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not
protected by privilege.") (citation omitted).

11

20, 2018) (citing <u>Poventud v. City of New York</u>, 750 F.3d 121, 132 (2d Cir. 2014). "To establish a Fourth Amendment excessive force claim, [a plaintiff] must show that the force used by the defendants was 'objectively unreasonable.'" <u>Palmenta</u>, 2018 WL 4516676, at *4 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 397 (1989)).[4] To the extent that plaintiff argues that defendants "ambushed" him at gunpoint and handcuffed him, Am Compl. at 4, defendants' actions of "merely drawing weapons when effectuating an arrest [do] not constitute excessive force as a matter of law." <u>Dunkelberger v. Dunkelberger</u>, No. 14-CV-3877 (KMK), 2015 WL 5730605, *15 (S.D.N.Y. Sept. 30, 2015) (citations omitted).[5] However, plaintiff further contends that Det. DiGiuseppe "injur[ed his] back by slamming him on the patrol car." Am. Compl. at 6. "[T]he Second Circuit has held that even minor injuries, including scrapes and bruises, can support an excessive-force claim." <u>Matthews v. City of New York</u>, 889 F. Supp. 2d 418, 442 (E.D.N.Y. 2012). Thus,

---

[4] Although plaintiff purports to bring his excessive force claim under the Eighth Amendment,

> [t]he Eighth Amendment standard [for excessive force] "applies only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions;" i.e., during the post-conviction stages ... Whereas the substantive due process rights provided by the Fourteenth Amendment apply only in situations where the protections provided by the Fourth and Eighth Amendments are not applicable. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 844-45, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). Here, [p]laintiff complains of abuses that occurred during his arrest and are properly analyzed under the Fourth Amendment.

<u>Williams v. Falkowski</u>, No. 9:11-CV-826 (GLS/RFT), 2013 WL 5423703, at *4 (N.D.N.Y. Sept. 26, 2013) (internal citation omitted); <u>Porath v. Bird</u>, No. 9:11-CV-963 (GLS/CFH), 2013 WL 2418253, at *16 ("If excessive force was allegedly used before arraignment, the Fourth Amendment standards govern.") citing <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989)).

[5] Insofar as plaintiff suggests that defendants approached him without reasonable suspicion or arrested him without probable cause, the undersigned notes that such claims would be barred by <u>Heck</u> unless plaintiff demonstrates that his criminal conviction was either overturned or otherwise expunged. See <u>Heck</u>, 512 U.S. at 486-87.

at this early stage in the litigation, plaintiff has adequately "pleaded factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Accordingly, plaintiff's allegations are sufficient to establish a plausible Fourth Amendment claim, and it is recommended that plaintiff's Fourth Amendment excessive force claim be permitted to proceed.[6]

## 5. IIED

Plaintiff contends that defendants caused him "emotional trauma" when they "ambushed" him and exacerbated his physical and mental health problems. Am. Compl. at 8. "Under New York law, [IIED] has four elements: (1) extreme and outrageous conduct; (2) intent to cause severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Thomas v. City of New York, No. 17-CV-6079, 2018 WL 5791965, at *12 (E.D.N.Y. Nov. 5, 2018) (quoting Restis v. Am. Coalition Against Nuclear Iran, Inc., 53 F. Supp. 3d 705, 729 (S.D.N.Y. 2014)). Plaintiff states that since the incident and defendants' "unnecessary [use of] force, he has suffered depression, anxiety, posttraumatic stress disorder, and sleep problems." Am. Compl. at 7-8. As plaintiff has alleged a cognizable federal claim for excessive force that "form[s] part of the same case or controversy under Article III of the United States Constitution," the undersigned finds that plaintiff has sufficiently pleaded an IIED claim,

---

[6] As plaintiff's amended complaint alleges only Det. DiGiuseppe's personal involvement in an incident of excessive force, plaintiff has properly pleaded a Fourth Amendment excessive force claim only as against Det. DiGiuseppe. See Am. Compl.

and recommends that the Court exercise supplemental jurisdiction over this claim. Pace v. Waterbury Police Dep't, Civ. No. 3:17CV00426(DJS), 2017 WL 1362683, at *4 (D. Conn. Apr. 12, 2017) (quoting 28 U.S.C. § 1367(a)) (internal quotation marks omitted).

### 6. Official Misconduct

Plaintiff argues that "defendants caused [his] constitutional rights to be violated by arbitrary action and unlawful conduct due to personal and retaliatory reasons." Am. Compl. at 8. He further contends that Det. DiGiuseppe lied and "extorted plaintiff for over $160.00 when he emptied plaintiff['s] pockets." Id.[7] Pursuant to New York Penal Law § 195.00,

> [a] public servant is guilty of official misconduct when, with intent to obtain a benefit or deprive another person of a benefit:
>
>> 1. He commits an act relating to his office but constituting an unauthorized exercise of his official functions, knowing that such act is unauthorized; or
>>
>> 2. He knowingly refrains from performing a duty which is imposed upon him by law or is clearly inherent in the nature of his office.

N.Y. Penal Law § 195.00.

The undersigned notes that "there is no private right of action to enforce either state or federal criminal statutes." Delany v. City of Albany, No. 1:18-CV-1259 (LEK/ATB), 2018 WL 5923901, at *5 (N.D.N.Y. Nov. 13, 2018), report and

---

[7] Earlier in the amended complaint, plaintiff indicates that Det. DiGiuseppe may taken over $170.00. See Am. Compl. at 4.

recommendation adopted in part, rejected in part sub nom. Delaney v. City of Albany, 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019)[8] (citing Carvel v. Ross, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011)).  Therefore, to the extent plaintiff is seeking defendants' prosecution for official misconduct, this claim cannot proceed.  As such, it is recommended that plaintiff's purported official misconduct claim be dismissed with prejudice.

### 7. Municipal Liability

Plaintiff has named in the caption of the amended complaint defendant City of Albany.  However, "a municipality cannot be held liable solely on a theory of respondeat superior."  Anderson v. Cnty. of Nassau, 297 F. Supp. 2d 540, 546 (E.D.N.Y. 2004).

> Pursuant to the standard for establishing municipality liability laid out in Monell v. Dep't of Soc. Servs. of the City of New York, 436 U.S. 658 (1978), in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell, 436 U.S. 658); see also Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.")[.] A municipality may be liable for deprivation of constitutional rights under § 1983 for policies or customs resulting in inadequate training, supervision, or hiring when the failure to train, supervise, or hire amounts to deliberate indifference to the rights of those with whom municipal employees will come into

---

[8] Plaintiff filed a separate action in the Northern District of New York naming Det. DiGiuseppe and the City of Albany as defendants.  See Delany, 2018 WL 5923901, at *1.  However, the underlying facts in that action take place in May 2016.  See id. at *2.

> contact.  See City of Canton, Ohio v. Harris, 489 U.S. 378,
> 388-89 (1989).  To establish causation, there must "at the very
> least be an affirmative link between the policy and the particular
> constitutional violation alleged."  Oklahoma v. Tuttle, 471 U.S.
> 808, 823 (1985).

Boyde v. New York, No. 5:16-CV-00555(LEK/TWD), 2016 WL 3573133, at *4 (N.D.N.Y.

May 19, 2016).  Thus, "in order to establish municipal liability, plaintiff must establish that

an identified municipal policy was the 'moving force [behind] the constitutional violation.'"

Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting Monell, 436

U.S. at 694) (emphasis added).

Plaintiff's allegation that the City of Albany failed to train its police officers "due to

defendants Det. Brace and DiGiuseppe and other members clearly violating established

laws against its citizens specifically the plaintiff" is conclusory as he fails to allege an

"affirmative link" between any custom or policy set forth by the City of Albany, and

defendants' alleged violations of plaintiff's constitutional rights.  See Boyde, 2016 WL

3573133, at *4; Am. Compl. at 8.  Accordingly, it is recommended that all claims against

the City of Albany be dismissed without prejudice and with leave to amend to provide

plaintiff an opportunity to identify a custom or policy set forth by the City of Albany and

demonstrate an affirmative link between that policy and defendants' alleged constitutional

violations.  See Boyde, 2016 WL 3573133, at *4.

### 8. John Doe Defendants

The undersigned observes that plaintiff has named four John Doe defendants:

Police Officer John Doe 1, 2, 3, and 4.  In the event that the District Judge permits this

amended complaint to proceed, and should plaintiff wishes to pursue this claim against these John Doe defendants, he must take reasonable steps to ascertain their identities. Once he ascertains the John Doe defendants' identities, plaintiff may file a motion seeking the Court's permission to amend his pleadings to identify the John Doe defendants by name.  Plaintiff is advised that failure to timely identify and serve[9] these currently unidentified defendants will result in this action being dismissed as against the John Doe defendants.

### III. Motion to Appoint Counsel

In a separately-filed motion, plaintiff also seeks the appointment of counsel.  Dkt. No. 7.  Plaintiff indicates that he is "physically [and] mentally disabled and [does not] have the expertise" to litigate his "complex" claims.  Id. at 1.  It is well settled that "[a] party has no constitutionally guaranteed right to the assistance of counsel in a civil case."  Leftridge v. Connecticut State Trooper Officer No. 1283, 640 F.3d 62, 68 (2d Cir. 2011) (citations omitted).  In Terminate Control Corp. v. Horowitz, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance.  If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination.  Id. at 1341 (quoting Hodge v. Police Officers, 802 F.2d 58, 61 (2d Cir.

---

[9] Service on defendants will not occur until the District Judge determines that a version of plaintiff's complaint may proceed beyond the initial review stage.

1986)); see also Leftridge, 640 F.3d at 69 (noting that a motion for appointment of counsel may be properly denied if the court "concludes that [the party's] chances of success are highly dubious.") (citations omitted).

However, prior to evaluating a request for an appointment of counsel, the plaintiff must make a threshold showing that he is unable to obtain counsel through the private sector or public interest firms. See Cooper v. A. Sargenti Co., Inc., 877 F.2d 170, 173-74 (2d Cir. 1989) (quoting Hodge, 802 F.2d at 61). Although plaintiff contends that he has contacted seven different attorneys but has not received a response, he has not proffered evidence demonstrating that he contacted those attorneys or not-for-profit agencies in an effort to seek pro bono or low-cost counsel. See Dkt. No. 7 at 1-2.

Moreover, before counsel is assigned, it must be determined whether plaintiff's claims are likely to be of substance. See Terminate Control Corp., 28 F.3d at 1341. Until the District Judge reviews this Report-Recommendation and Order and determines whether plaintiff's complaint can proceed, must be dismissed, or whether he may be accorded an opportunity to amend, plaintiff's claims have not been determined to have merit. This case is at its earliest stages, and plaintiff has not demonstrated that appointment of counsel is warranted at this time.

Accordingly, it is ordered that plaintiff's motion for counsel be denied without prejudice and with opportunity for plaintiff to renew his motion for appointment of counsel in the future demonstrates a change in his circumstances. The undersigned reminds plaintiff that any future motion for counsel must be accompanied by evidence of the efforts that plaintiff has taken to retain counsel on his own, either in the public or private

18

sector. Financial need or status as an incarcerated person, without more, does not

suffice for appointment of pro bono counsel in a civil action.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**ORDERED**, that plaintiff's motion for in forma pauperis relief (Dkt. No. 4) be

**GRANTED**; and it is

**RECOMMENDED**, that to the extent that plaintiff seeks to bring his claims against

defendants Det. Brace, Det. DiGiuseppe, and the John Doe police officer defendants in

their official capacities, these claims be dismissed with prejudice; and it is further

**RECOMMENDED**, that plaintiff's official misconduct claim be dismissed with

prejudice; and it is further

**RECOMMENDED**, that plaintiff's false imprisonment, false arrest, and defamation

claims insofar as they are brought against the individual defendants in their individual

capacities, be dismissed without prejudice and with opportunity to amend to specify

(1) the charges brought against him and whether his conviction or sentence has been

declared invalid, or whether there are any charges pending arising out of the incident set

forth in the Am. Compl.; and (2) whether the alleged defamatory statement was published

to a third party; and it is further

**RECOMMENDED**, that plaintiff's Fourth Amendment excessive force and IIED

claims against the individual defendants in their individual capacities proceed but that the

summons and complaint not be issued and served until plaintiff has an opportunity to

amend his complaint to cure the defects identified herein; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be provided thirty (30) days from the date of any order adopting this Report-Recommendation and Order to file a second amended complaint limited to claims not otherwise dismissed with prejudice by this Court,[10] and should plaintiff decline to file a second amended complaint within that time, the Clerk return the case to the magistrate judge for service of the amended complaint with the unamended claims deemed stricken; and it is

**ORDERED**, that plaintiff's Motion to Appoint Counsel (Dkt. No. 7) be **DENIED**, but the denial is without prejudice and with opportunity to renew such request in the future should plaintiff demonstrate a change in circumstances; and it is further

**ORDERED**, that if plaintiff files a second amended complaint within the time frame set forth herein, the Clerk of the Court is to return the case to the magistrate judge for review of the second amended complaint; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days

---

[10] Any second amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice. If accepted by the Court for filing, the second amended complaint will supersede and replace the amended complaint in its entirety; thus, the second amended complaint becomes the operative pleading and the amended complaint will no longer be considered. See Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

within which to file written objections to the foregoing report.  Such objections shall be

filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN**

**FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette,

984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs.,

892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED R. CIV. P. 6(a), 6(e), 72.[11]

Dated: April 4, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Id. § 6(a)(1)(C).