**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

CLARENCE DELANEY, JR.,

                          Plaintiff,                    No. 1:18-CV-1193
                                                        (DNH/CFH)

        v.

CITY OF ALBANY, et al.,

                          Defendants.

_____

**APPEARANCES:**

Clarence Delaney Jr.
17-A-0236
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508
Plaintiff pro se

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER

        Plaintiff pro se Clarence Delaney, Jr. commenced this action on October 4, 2018

against defendants City of Albany, Detective ("Det.") Brace, Det. DiGiuseppe, and John

Doe police officers 1-4.  See Dkt. No. 1.  Presently pending before the Court is a review

of plaintiff's second amended complaint pursuant to § 1915(e)(2)(B).  Dkt. No. 17

("Sec. Am. Compl.").


### I. Background

        Following a review of the amended complaint pursuant to 28 U.S.C. § 1915(e),

the undersigned granted plaintiff's In Forma Pauperis ("IFP") application and recommended that (1) to the extent that plaintiff sought to bring his claims against Det. Brace, Det. DiGiuseppe, and the John Doe police officer defendants in their official capacities, these claims be dismissed with prejudice; (2) plaintiff's official misconduct claim be dismissed with prejudice; (3) plaintiff's false imprisonment, false arrest, and defamation claims, insofar as they are brought against the individual defendants in their individual capacities, be dismissed without prejudice and with opportunity to amend to specify (i) the charges brought against plaintiff and whether any conviction or sentence has been declared invalid, or whether there are any charges pending arising out of the incident set forth in the Amended Complaint, and (ii) whether the alleged defamatory statement was published to a third party; (4) plaintiff's municipal liability claim be dismissed without prejudice and with an opportunity to specify a custom or policy set forth by the City of Albany and demonstrate an affirmative link between that policy and defendants' alleged constitutional violations; and (5) plaintiff's Fourth Amendment excessive force and intentional infliction of emotional distress ("IIED") claims against the individual defendants proceed. See Dkt. No. 15 at 16, 19-20.

On April 30, 2019, District Judge David N. Hurd adopted the Report-Recommendation and Order in its entirety. Dkt. No. 16. In that Decision and Order, Judge Hurd directed that if plaintiff filed a timely second amended complaint, it be forwarded to the undersigned for review. Id. at 3. On May 8, 2019, plaintiff filed a second amended complaint. See generally Sec. Am. Compl.

**1. Additional Factual Background**[1]

Plaintiff contends that he was charged with two counts of felony grand larceny in the fourth degree for stealing credit cards, and felony criminal possession of stolen property in the fourth degree for his possession of stolen credit cards and "makita drills." Sec. Am. Compl. at 6. Plaintiff maintains that the "makita drills" were never in his possession. Id. Five days later, at the preliminary scheduling hearing, the prosecutor reduced plaintiff's charges and added a separate charge of obstruction to governmental administration concerning plaintiff's alleged refusal to be fingerprinted during booking. Id. Plaintiff pleaded guilty to the obstruction charge on February 7, 2019 and was sentenced to time served. Id.; Dkt. No. 17-1 at 2.[2] Plaintiff states that Albany City Court Judge Stilgmeier dismissed "all other charges related to [his] initial unlawful arrest . . . on record as a way to protect defendants from testifying at [his] February 7, 2019 probable cause hearing[.]" Sec. Am. Compl. at 6. Plaintiff suggests that the records in his criminal file were inaccurate because the prosecutor's information incorrectly named the owner of the allegedly stolen "makita drills", and the actual owner was a friend and/or relative of Det. Brace. Id. at 7. Plaintiff argues this amounts to malicious prosecution. Id. Plaintiff also contends that the $117.00 that Det. DiGiuseppe allegedly took during his arrest has not been returned. Id. Judge

---

[1] For a full review of the facts alleged in this matter, reference is made to this Court's prior Report-Recommendation and Order (Dkt. No. 15) and to the second amended complaint. Sec. Am. Compl.

[2] Plaintiff does not set forth any claims in this action relating to the obstruction charge.

3

Stilgmeier ordered the return of the money during the February 7, 2019 hearing.  Id.[3]

Plaintiff "believes this whole matter to be a big conspiracy . . . by the defendants."  Id. at

8.

Plaintiff further contends that the "City of Albany failed to train, supervise, and

discipline its employees, specifically the defendants because the City and Chief of

Police [were] informed by the plaintiff through a [letter complaint] and through the

Civilian Complaint Review Board[.]"  Sec. Am. Compl. at 8.  Plaintiff alleges that the City

of Albany has an ongoing practice wherein police officers "violat[e] citizens

constitutional rights through illegal search and [seizure] and excessive force[.]"  Id.

Plaintiff contends that he has had "problems" with Det. DiGiuseppe in the past and

argues that "there apparently appears to be a problem with the City of Albany failing to

properly train, supervise and discipline their police officers."  Id. at 9.  Plaintiff argues

that the City of Albany is liable because the defendants were deliberately indifferent to

his constitutional rights "by law that is clearly established and their actions multiple

times prior which triggered a civil rights action in the past by other police officers and

one of the part[ies] in this present action Detective DiGiuseppe [.]"  Id.


## II. Review of Second Amended Complaint[4]

## 1. False Imprisonment, False Arrest, and Malicious Prosecution

---

[3] The undersigned has considered the documents in Dkt. No. 18.

[4] Any unpublished decisions cited within this Report-Recommendation and Order have been
provided to plaintiff pro se.

In the April 4, 2019, Report-Recommendation and Order, the undersigned recommended that plaintiff be granted the opportunity to amend his complaint to specify whether plaintiff's false imprisonment and false arrest claims were barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Dkt. No. 15 at 19. Plaintiff alleges that, in connection with the August 2018 incident, he was initially charged with two counts of felony grand larceny in the fourth degree for stealing credit cards, and felony criminal possession of stolen property in the fourth degree for his possession of stolen credit cards and "makita drills, but that these charges were dismissed in Albany City Court on February 7, 2019."[5] See Sec. Am. Compl. at 6. At this early stage in the litigation, because plaintiff sufficiently alleges that the charges against him were dismissed on February 7, 2019, he has demonstrated that his causes of action for false imprisonment and false arrest would not otherwise render his sentence invalid because his charges resulting from the August 2018 arrest have been vacated. See Heck, 512 U.S. at 486-87; cf. Godley v. Onondaga Cnty., No. 6:16-CV-01419 (DNH/TWD), 2017 WL 2805162, at *6 (N.D.N.Y. Jan. 6, 2017) ("Here, because Plaintiff has failed to show that his conviction has been overturned (and, in fact, declares he is currently incarcerated as a result of the above-referenced constitutional violations for a crime he did not commit) his § 1983 claims are barred under Heck unless and until such time as Plaintiff's conviction is overturned or his sentence is invalidated."). The undersigned notes that plaintiff's guilty plea to the obstruction charge does not impact the Heck analysis as the

_____

[5] Plaintiff proffers documents concerning the disposition of his charges, which seem to suggest that the charges from the August 2018 incident were consolidated into a separate case in Albany City Criminal Court. See Dkt. No. 17-1 at 1, 3.

incident occurred in the booking room at the City of Albany Police Station after plaintiff had been arrested.  See Sec. Am. Compl. at 6.  As such, the obstruction charge does not stem from plaintiff's August 9, 2018 arrest and his conviction for obstruction would not be called into question by plaintiff's claims of false arrest and false imprisonment. See id.

As to the merits of plaintiff's causes of action, the elements for false arrest and false imprisonment under either § 1983 or New York law require a plaintiff to demonstrate that "'(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) (quoting Broughton v. State, 37 N.Y. 2d 451, 456 (1975) (setting forth the standard for false imprisonment)); Corye v. Michel, No. 1:16-CV-00887 (GTS/TWD), 2016 WL 11477503, at *4 (N.D.N.Y. Oct. 4, 2016), report and recommendation adopted 2016 WL 6820377 (N.D.N.Y. Nov. 18, 2016) (citation omitted) (setting forth the standard for false arrest).  "False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment."  Vasquez v. City of New York, No. 99 Civ. 4606(DC), 2000 WL 869492, at *3 (S.D.N.Y. June 29, 2000) (quoting Covington v. City of New York, 171 F.3d 117, 125 (2d Cir. 1999)); see also Kilburn v. Vill. of Saranac Lake, 413 F. App'x 362, 363 (2d Cir. 2011) (summary order) (stating that, under New York law, a false imprisonment "claim is identical to a false arrest claim").

Plaintiff contends that Det. Brace, Det. DiGiuseppe, and the John Doe police officers "unlawfully arrested and detained [him] without probable cause" for a crime that he did not commit. See Sec. Am. Compl. at 10-11. As such, at this stage in the litigation, plaintiff has adequately pleaded that (1) Det. Brace, Det. DiGiuseppe, and the John Doe police officers intended to confine him; (2) plaintiff was conscious of that confinement; (3) plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged. See Singer, 63 F.3d at 118. The undersigned notes that probable cause is a complete defense to claims of false arrest and false imprisonment. See Hawthorne v. City of Albany, No. 1:17-CV-00716 (GTS/TWD), 2017 WL 3822112, at *6 (N.D.N.Y. July 25, 2017), report and recommendation adopted sub nom. Hawthorne v. Ruecker, 2017 WL 4351520 (N.D.N.Y. Oct. 2, 2017) (citing Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)). "However, '[w]hen planted evidence is the basis for an arrest, officers accused of planting the evidence cannot assert probable cause as a reason to dismiss a claim for false arrest.'" Id. (quoting Hill v. Melvin, No. 05 Civ. 6645 (AJP), 2006 WL 1749520, at *11 (S.D.N.Y. June 27, 2006), aff'd 323 F. App'x 61 (2d Cir. 2009) (summary order)). Thus, because plaintiff contends that he was not in possession of the "makita drills" or the credit cards, and seems to suggest that defendants may have planted the allegedly stolen items nearby because of his "problems" with Det. DiGiuseppe, see Sec. Am. Compl. at 5-6, at this early stage in the litigation, plaintiff's allegations are sufficient to establish plausible false imprisonment and false arrest claims, and it is recommended that plaintiff's claims be permitted to proceed.

7

To the extent that plaintiff attempts to set forth a malicious prosecution claim, <u>see</u> Sec. Am. Compl. at 7, the undersigned reaches the same result. The elements of a malicious prosecution claim are "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." <u>Savino v. City of New York</u>, 331 F.3d 63, 72 (2d Cir. 2003) (quoting <u>Colon v. City of New York</u>, 60 N.Y.2d 78, 82 (1983) (internal quotation marks omitted)). "In addition, the Second Circuit requires that a plaintiff demonstrate that there was a 'post arraignment seizure,' since a § 1983 malicious prosecution claim is 'grounded ultimately on the Fourth Amendment's prohibition of unreasonable seizures.'" <u>Hawthorne</u>, 2017 WL 3822112, at *6 (quoting <u>Swartz v. Insogna</u>, 704 F.3d 105, 112 (2d Cir. 2013)).

Plaintiff has alleged that in August 2018, he was arrested and charged with two counts of felony grand larceny in the fourth degree for stealing credit cards, and felony criminal possession of stolen property in the fourth degree for his possession of stolen credit cards and "makita drills," which were ultimately reduced at his preliminary hearing. Sec. Am. Compl. at 6. Plaintiff contends that the charges were dismissed on February 7, 2019, indicating not only a favorable termination for plaintiff, but also a post-arraignment seizure. <u>See id.</u>; <u>Savino</u>, 331 F.3d at 72; <u>Hawthorne</u>, 2017 WL 3822112, at *6. Moreover, plaintiff contends that defendants targeted him due to prior interactions with them, and that he was not in possession of the "makita drills" or stolen credit cards and that they may have been planted, suggesting a lack of probable cause and malice. <u>See id.</u> at 6-7; <u>Savino</u>, 331 F.3d at 72; <u>Hawthorne</u>, 2017 WL 3822112, at *6. Accordingly, at this early stage, plaintiff sufficiently sets forth a plausible malicious

8

prosecution, and it is recommended that plaintiff's claim be permitted to proceed. See Hawthorne, 2017 WL 3822112, at *1, 6 (allowing a malicious prosecution claim to proceed against the police officer defendants); Frederique v. Cnty. of Nassau, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) ("[A]n arresting officer may be held liable for malicious prosecution when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, or when she withholds relevant and material information.").

## 2. Defamation

In the April 4, 2019, Report-Recommendation and Order, the undersigned recommended that plaintiff be granted the opportunity to amend his complaint to specify whether his defamation claim was barred by Heck, and whether the alleged defamatory statement was published to a third party. Dkt. No. 15 at 19. For the reasons set forth above, the undersigned finds that plaintiff's defamation claim is not subject to a Heck bar because he sufficiently alleges that the charges against him were dismissed. See supra, at 5-6.

With respect to defamation's publication requirement, the undersigned previously noted that "[u]nder New York defamation law, 'publication is a term of art . . . . A defamatory writing is not published if it is read by no one but the one defamed. Published it is, however, as soon as read by any one else.'" Albert v. Loksen, 239 F.3d 256, 269 (2d Cir. 2001) (quoting Ostrowe v. Lee, 256 N.Y. 36, 38 (1931)). Still, the undersigned notes that "it is well-established that a statement is generally 'subject to a

qualified privilege when it is fairly made by a person in the discharge of some public or private duty, legal or moral.'" Frederique, 168 F. Supp. 3d at 488 (quoting Chandok v. Klessig, 632 F.3d 803, 814 (2d Cir. 2011)). "Qualified privilege exists where communications are: '(1) made by an individual who has an interest in the subject, or a moral or societal duty to speak; and (2) sent to a person who has a corresponding interest or duty.'" Id. (quoting Nicholas v. Cty. of Binghamton, No. 10-CV-1565, 2012 WL 3261409, at *19 (N.D.N.Y. Aug. 8, 2012). The undersigned notes that although plaintiff argues that Det. Brace "lied in a written report to [his] parole officer that [he] was in possession of makita drills that had been reported stolen . . . which was untrue and defamation to my name, status as a parolee, and reputation," Sec. Am. Compl. at 5, such communication constitutes internal correspondence between a police officer and a parole officer. By nature of their positions in law enforcement, it is clear that Det. Brace had a legal obligation to inform plaintiff's parole officer that plaintiff had been charged with certain crimes. See Frederique, 168 F. Supp. 3d at 488 (concluding that the plaintiff's defamation claims against the defendant police officer must fail because the alleged defamatory document was an internal communication between the defendant police officer and a commanding officer of the Internal Affairs Unit). However, a plaintiff may overcome the qualified privilege defense if he or she establishes that the defendant "acted beyond the scope of the privilege, with common law malice, or with knowledge that the statement was false or with reckless disregard as to its truth." Id. (citation omitted). As plaintiff maintains that he was not in possession of the goods he allegedly stole at the time of his arrest and that defendants targeted him due to prior

10

"problems" with Det. DiGiuseppe, the undersigned concludes that, at this early stage in the litigation, plaintiff adequately pleaded sufficient information to overcome this privilege.  Accordingly, it is recommended that plaintiff's defamation claim pursuant to New York State law proceed.

### 3. Assault and Battery

In addition to his constitutional claims, plaintiff's second amended complaint raises claims for assault and battery under New York State law.  See Sec. Am. Compl. at 12.   "To succeed on an assault or battery claim in the law enforcement context, a plaintiff must demonstrate that defendants' conduct was not reasonable within the meaning of the New York statute concerning justification for law enforcement's use of force in the course of performing their duties."  Simmons v. Cowan, No. 5:12-CV-1851, 2015 WL 12513461, at *5 (N.D.N.Y. Mar. 11, 2015) (citation and internal quotations omitted).  Further, "the Fourth Amendment excessive force standard applies to assault and battery claims against a police officer under New York law."  Id. (citing Humphrey v. Landers, 344 F. App'x 686, 688 (2009) (summary order) ("Except for § 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims are substantially identical.")).[6]

_____

[6] N.Y. Penal Law § 35.50(1) states:

> 1. A police officer or a peace officer, in the course of effecting or attempting to effect an arrest, or of preventing or attempting to prevent the escape from custody, of a person whom he or she reasonably believes to have committed an offense, may use physical force when and to the extent he or

As to whether defendants' alleged conduct was reasonable, plaintiff alleges that defendants "manhandl[ed] [him] causing injuries to [his] right arm, " and that he informed defendants that their actions were aggravating his "disabling right arm" condition.  Sec. Am. Compl. at 4, 10.  There is no indication in the second amended complaint that plaintiff acted in a manner to cause the defendants to reasonably believe that such force was necessary to effectuate the arrest.  <u>See</u> N.Y. PENAL LAW § 35.50(1).  As such, at this stage in the litigation, the undersigned finds that plaintiff has set forth a colorable claim for assault and battery, and its recommended that plaintiff's claims be permitted to proceed.

### 4. Municipal Liability

In the April 4, 2019, Report-Recommendation and Order, the undersigned

---

she reasonably believes such to be necessary to effect the arrest, or to prevent the escape from custody, or in self-defense or to defend a third person from what he or she reasonably believes to be the use or imminent use of physical force; except that deadly physical force may be used for such purposes only when he or she reasonably believes that:

(a) The offense committed by such person was:

(i) a felony or an attempt to commit a felony involving the use or attempted use or threatened imminent use of physical force against a person; or

(ii) kidnapping, arson, escape in the first degree, burglary in the first degree or any attempt to commit such a crime; or

(b) The offense committed or attempted by such person was a felony and that, in the course of resisting arrest therefor or attempting to escape from custody, such person is armed with a firearm or deadly weapon; or

(c) Regardless of the particular offense which is the subject of the arrest or attempted escape, the use of deadly physical force is necessary to defend the police officer or peace officer or another person from what the officer reasonably believes to be the use or imminent use of deadly physical force.

recommended that plaintiff be granted the opportunity to amend his complaint to identify a custom or policy set forth by the City of Albany and demonstrate an affirmative link between that policy and defendants' alleged constitutional violations.  Dkt. No. 15 at 16. "Pursuant to the standard for establishing municipality liability laid out in [Monell v. Dept. of Soc. Serv., 436 U.S. 658, 658 (1978)],  in order to set forth a cognizable claim for municipal liability under § 1983, a plaintiff must plead and prove that a deprivation of his constitutional rights 'was caused by a governmental custom, policy, or usage of the municipality.'"  Schisler v. Utica Police Dep't., No. 6:16-CV-01051 (MAD/TWD), 2016 WL 11265987, at *2 (N.D.N.Y. Sept. 9, 2016) (quoting Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012); see Vippolis v. Vill. of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985) ("The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer.").   "[P]laintiff must establish that an identified municipal policy was the 'moving force [behind] the constitutional violation.'" Plair v. City of New York, 789 F. Supp. 2d 459, 468 (S.D.N.Y. 2011) (quoting Monell, 436 U.S. at 694) (emphasis added).

In his second amended complaint, plaintiff argues that the "City of Albany failed to train, supervise, and discipline its employees, specifically the defendants[.]"  Sec. Am. Compl. at 8.  Plaintiff alleges that the City of Albany has an ongoing custom, wherein police officers "violat[e] citizens constitutional rights through illegal search and [seizure] and excessive force[.]"  Id.  Plaintiff states that the actions of the City of Albany police officers are in violation of "clearly[-]established law," and that their alleged

conduct in effectuating illegal searches and seizures has "triggered" multiple civil rights lawsuits in the past. See id. at 9. Although it is unclear if plaintiff is referencing civil rights actions that he has brought against the City of Albany, or civil rights actions commenced by others, the undersigned concludes that, at this early stage in the litigation, plaintiff has set forth "supporting factual allegations" to show that defendants detained, searched, and used excessive force against plaintiff pursuant to an ongoing custom of inadequately training police officers to promote such constitutional violations. Gray-Davis v. New York, No. 5:14-CV-1490 (GTS/TWD), 2015 WL 2120518, at *6 (N.D.N.Y. May 5, 2015); see Malloy v. Sopchak, No. 1:18-CV-1460 (BKS/DJS), 2019 WL 1024354, at *2, 4 (N.D.N.Y. Jan. 28, 2019), report and recommendation adopted 2019 WL 1025765 (N.D.N.Y. Mar. 4, 2019) (citation and internal quotation marks omitted) (allowing the plaintiff's municipal liability claim to proceed where the plaintiff alleged that the City of Albany "inadequately train[ed] and supervise[d] staff to encourage constitutional violations" such as false arrest and excessive force).

Therefore, plaintiff's allegations that the City of Albany maintains an ongoing practice of inadequately training staff in order to promote excessive force and illegal searches and seizures are sufficient to demonstrate, at this early stage, that such actions were the "moving force [behind] [his] constitutional violation." Plair, 789 F. Supp. 2d at 468; Malloy, 2019 WL 1024354, at *2, 4. Accordingly, it is recommended that plaintiff's municipal liability claim proceed.

## 5. Conspiracy

Plaintiff appears to allege that defendants, nonparty prosecutors, and unnamed Albany City Court personnel conspired against him.  See Sec. Am. Compl. at 8.  "To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).  Plaintiff conclusorily states that he "believes this whole matter to be a big conspiracy . . . by the defendants," Sec. Am. Compl. at 2, but fails to demonstrate any agreement between two or more state actors, or how defendants acted in concert to allegedly falsely arrest him.  See id.[7]  The undersigned notes that "[w]holly conclusory claims of conspiracy are properly dismissed sua sponte on initial review."  Hawthorne, 2017 WL 3822112, at *7 (citation omitted).  Accordingly, to the extent that plaintiff attempts to set forth a conspiracy claim against defendants, it is recommended that this claim be dismissed without prejudice.[8]

## 6. First Amendment Retaliation

Plaintiff's second amended complaint may also be interpreted as attempting to plead a First Amendment retaliatory arrest claim against Det. DiGiuseppe.  See

---

[7] Plaintiff's alleged false arrest constitutes an overt act.  See Pangburn, 200 F.3d at 72.

[8] To the extent that plaintiff is permitted to file a third amended complaint in an attempt to correct this deficiency, he is reminded that he must seek to identify and add as defendants the unnamed nonparty prosecutor and Albany City Court personnel who he alleges conspired against him to this action.

generally Sec. Am. Compl. Specifically, plaintiff seems to suggest that Det. DiGiuseppe sought to arrest him because he has had "problems with [him] in the past and filed complaints" against him. Id. at 5, 13. Plaintiff also alleges that, on the day of the incident, Det. DiGiuseppe stated to him, "you like to file complaints, huh?" Id. at 13.

"To prevail on a First Amendment theory of retaliatory arrest, [Plaintiff] must prove that (1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Malloy, 2019 WL 1024354, at *4 (citation and internal quotation marks omitted). Although plaintiff appears to suggest that Det. DiGiuseppe arrested him because of prior complaints and/or "problems," Sec. Am. Compl. at 5, 13, there is no indication that plaintiff stopped filing lawsuits and/or complaints against Det. DiGiuseppe or that his speech was otherwise "actually chilled." Cabrera v. City of New York, No. 16-CV-2298 (RRM/RER), 2018 WL 4636798, at *8 (E.D.N.Y. Sept. 27, 2018) (quoting Curely v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) ("Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech."). In fact, the undersigned notes plaintiff filed at least two lawsuits, including the underlying action, against Det. DiGiuseppe after his alleged false arrest. See Delaney v. City of Albany, No. 1:18-CV-1259 (LEK/ATB), 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019). Accordingly, because plaintiff has not adequately demonstrate the elements of a retaliatory arrest claim, it is recommended that this claim be dismissed with prejudice.

**7. Fourth and Fifth Amendment Seizure Claims**

Plaintiff alleges that Det. DiGiuseppe "violated [his] right to be free from the deprivation of property without due process of law . . . when he seized" $170.00 from him during the arrest. Sec. Am. Compl. at 14. "[T]he Supreme Court has held that a 'seizure' under the Fourth Amendment 'occurs when there is some meaningful interference with an individual's possessory interests in that property.'" Heidorf v. Town of Northumberland, 985 F. Supp. 250, 257 (N.D.N.Y. 1997) (quoting Soldal v. Cook Cnty., Illinois, 505 U.S. 56, 61 (1992) (additional internal quotation marks omitted)).

Although the undersigned acknowledges that plaintiff has proffered evidence demonstrating that defendants seized at least some monetary funds from plaintiff during his arrest, plaintiff's exhibits also establish that Judge Stilgmeier ordered on February 7, 2019 that the funds be returned. See Dkt. No. 17-1 at 41-42, 45, 47. To the extent that plaintiff suggests that the seizure of his property was improper under the Fourth Amendment, the undersigned notes that as long as the initial seizure of property was lawful, the fact that plaintiff's property was seized does not, without more, state a Fourth Amendment claim of unreasonable seizure. See Shaul, 363 F.3d at 185 (citing Jacobsen, 466 U.S. at 113). Because the record indicates that defendants seized plaintiff's money pursuant to a belief that it had previously been stolen in relation to "ongoing car larceny investigation[s]," see Dkt. No. 17-1 at 7, 41, plaintiff cannot argue that the initial seizure of his property was not lawful. See Shaul, 363 F.3d at 185; Dkt. No. 17-1 at 41 (noting in the Albany Police Department Investigation Report that "the amount of change in the victim's pocket is not a normal amount that is usually carried

on ones person and is likely taken from vehicle's [sic] while the defendant was committing the crime of larceny," as a reason why the money was seized and placed into evidence).[9]  Accordingly, it is recommended that, insofar as plaintiff's complaint may be read as attempting to set forth a Fourth Amendment claim for improper seizure of his property, such claim be dismissed with prejudice.

As to plaintiff's Fifth Amendment claim, this Court has recognized that the Fifth Amendment protects against the seizure or theft of property.  See Center v. Catholic Charities, No. 15-CV-597 (LEK/ATB), 2015 WL 4067559, at *5 n.7 (N.D.N.Y. July 2, 2015) ("Theft or destruction of property, if appropriate, could be protected by the Due Process Clause of the Fourteenth Amendment (state) or the Fifth Amendment (federal)."); Stegemann v. Rensselaer Cnty. Sheriff's Office, No. 1:15-CV-21 (TJM/CFH), 2017 WL 4350517, at *3 (N.D.N.Y. Apr. 17, 2017), report and recommendation adopted 2017 WL 2628872 (N.D.N.Y. June 16, 2017), reconsideration denied 2017 WL 4350518 (N.D.N.Y. July 6, 2017) (assessing the plaintiff's claims for improper seizure of property under the Fifth Amendment).  It appears plaintiff is contending that his rights were violated under the Fifth Amendment insofar as his money was seized without due process.  See Sec. Am. Compl. at 14.  The undersigned notes that plaintiff cites to the Fifth Amendment, "but '[t]he Fifth Amendment governs the conduct of the federal government and federal employees, and does not regulate the activities of state officials or state actors.'"  Marino v. City Univ. of New York, 18 F.

---

[9] Unlike the credit cards and "makita drills," which plaintiff maintains that he did not possess at the time of his arrest, plaintiff contends that he had the money on his person, but that defendants improperly seized it in connection with the investigation.  See Sec. Am. Compl. at 14.

Supp. 3d 320, 336-37 (E.D.N.Y. 2014) (quoting <u>Viteritti v. Inc. Vill. of Bayville</u>, 831 F.

Supp. 2d 583, 592 (E.D.N.Y.2011)).   As plaintiff has commenced this action against the

City of Albany and various police officers and not against the federal government or

federal employees, it is recommended that, to the extent that plaintiff is alleging a Fifth

Amendment seizure of property claim, this claim be dismissed with prejudice.  The

undersigned recommends that in light of special solicitude, the second amended

complaint be read as if plaintiff brought his claim pursuant to the Fourteenth

Amendment.  <u>See</u> <u>Schweiker v. Wilson</u>, 450 U.S. 221, 226 n.6 (1981) (noting that the

Fifth Amendment imposes the same standard on the federal government as does the

Fourteenth Amendment on state governments).

Plaintiff's claim that his money was seized without due process is analogous to

his Fourth Amendment claim that defendants improperly seized his funds.  The

Supreme Court of the United States has held that if "a particular Amendment 'provides

an explicit textual source of constitutional protection' against a particular sort of

government behavior, 'that Amendment, not the more generalized notion of "substantive

due process" must be the guide for analyzing these claims.'" <u>Albright v. Oliver</u>, 510 U.S.

266, 273 (1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)).  The

undersigned "may not apply [a] substantive due process analysis if Plaintiff's claims are

'covered by' the Fourth Amendment; in other words, if [the plaintiff's] claims arise from a

search or a seizure." <u>Campbell v. City of New York</u>, No. 16-CV-7201 (NGG/SMG),

2019 WL 569768, at *8 (E.D.N.Y. Feb. 11, 2019) (citation omitted).  In <u>Robinson v.

Velasquez</u>, the Eastern District of New York agreed that "the key question in

19

determining whether plaintiff's allegations sound under the Fourth or the Fourteenth Amendment is whether [the plaintiff] was seized within the meaning of the Fourth Amendment at the time he sustained his injuries.  If he was seized, then the Fourth Amendment applies."  Robinson v. Velasquez, No. 07-CV-3645(KAM)(LB), 2010 WL 1010733, at *5 (E.D.N.Y. Mar. 15, 2010) (internal quotation marks and citation omitted). If the plaintiff was not seized, however, his or her claims should be assessed pursuant to the Fourteenth Amendment's substantive due process clause.  See id. (citing Cnty. of Sacramento v. Lewis, 523 U.S. 833, 844-45 (1998) (holding that the Fourteenth Amendment, not the Fourth Amendment, applied where police car unintentionally struck a fleeing motorcycle causing injury to its passenger because the passenger was not seized)).

    The second amended complaint is clear that defendants seized approximately $170.00 in conjunction with his arrest on August 9, 2018.  See Sec. Am. Compl. at 14. As such, plaintiff was "seized within the meaning of the Fourth Amendment at the time he sustained his injuries," Robinson, 2010 WL 1010733, at *5, and any such claim must be assessed under the Fourth Amendment.  See Biswas v. City of New York, 973 F. Supp. 2d 504, 524 (S.D.N.Y. 2013) ("Just like the plaintiff in Albright, the plaintiff in this case can seek a remedy under the Fourth Amendment through § 1983.  Accordingly, no separate cause of action exists under the rubric of substantive due process with respect to the deprivation of her liberty interest.").  As plaintiff was "seized" when defendants confiscated his money, and his claims arise from that seizure, the undersigned finds that plaintiff's claim "fall[s] squarely within the ambit of the Fourth Amendment."

Campbell, 2019 WL 569768, at *8.  Thus, plaintiff cannot raise an independent claim for improper seizure of funds under the Fourteenth Amendment.  Accordingly, it is recommended that (1) plaintiff's Fifth Amendment claim be read as a Fourteenth Amendment claim; and (2) to the extent that plaintiff attempts to set forth a Fourteenth Amendment claim for improper seizure of his property without due process, this claim be dismissed with prejudice.

### III. Motion to Appoint Counsel

On May 28, 2019, plaintiff filed a letter motion requesting a "court[-]appointed attorney in this matter due to the complexity of [the] case."  Dkt. No. 18 at 1.  On June 13, 2019, plaintiff filed a second motion to appoint counsel and attached responses from attorneys and not-for-profit agencies in his effort to seek counsel.  See Dkt. No. 20.  For the reasons set forth in the April 4, 2019 Report-Recommendation and Order, the Court denies plaintiff's motions.  Although plaintiff has proffered evidence that he has attempted to find an attorney on his own, the Court reiterates that the case is at its earliest stages, and plaintiff has not demonstrated that appointment of counsel is warranted at this time.  See Dkt. No. 15 at 18.

Accordingly, it is ordered that plaintiff's motion for counsel be denied without prejudice and with opportunity for plaintiff to renew his motion for appointment of counsel at a later date should plaintiff demonstrate a change in his circumstances.  The undersigned reminds plaintiff that any future motion for counsel must be accompanied by evidence of the efforts that plaintiff has taken to retain counsel on his own, either in

the public or private sector.  Financial need or status as an incarcerated person, without more, does not suffice for appointment of pro bono counsel in a civil action.

## IV. Conclusion

**WHEREFORE**, for the reasons stated herein, it is hereby

**RECOMMENDED**, to the extent that plaintiff attempts to set forth a conspiracy claim against defendants, this claim be **DISMISSED WITHOUT PREJUDICE** and with opportunity to amend to demonstrate an agreement between defendants, and how defendants acted in concert to allegedly falsely arrest him; and it is further

**RECOMMENDED**, insofar as plaintiff's second amended complaint may be read as attempting to set forth Fourth, Fifth and Fourteenth Amendment claims for improper seizure of his property or a First Amendment claim for retaliatory arrest, such claims be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation and Order, plaintiff be provided thirty (30) days from the date of any order adopting this Report-Recommendation and Order to file a third amended complaint limited to claims not otherwise dismissed with prejudice by this Court,[10] and (1) should plaintiff decline to file a third amended complaint within that time, the Clerk return the case to the

---

[10]  Any third amended complaint must be a complete pleading and include all facts and claims not otherwise dismissed by the Court with prejudice.  If accepted by the Court for filing, the third amended complaint will supersede and replace the amended complaint in its entirety; thus, the third amended complaint becomes the operative pleading and the second amended complaint will no longer be considered.  See Dluhos v. Floating & Abandoned Vessel, Known as New York, 162 F.3d 63, 68 (2d Cir. 1998) ("[I]t is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.") (citing Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

Magistrate Judge for service of the second amended complaint with the unamended claims deemed stricken; or (2) should plaintiff file a third amended complaint within the time frame set forth herein, the Clerk of the Court is to return the case to the Magistrate Judge for review of the third amended complaint; and it is

**ORDERED**, that plaintiff's Motions to Appoint Counsel (Dkt. Nos. 18, 20) be **DENIED**, but the denial is without prejudice and with opportunity to renew such request in the future should plaintiff demonstrate a change in circumstances; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on plaintiff in accordance with Local Rules.

**IT IS SO ORDERED.**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[11]

Dated: June 20, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[11] If you are proceeding pro se and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).