UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

CLARENCE DELANEY, JR.,

                Plaintiff,                  No. 1:18-CV-1193
                                                 (DNH/CFH)
    v.

CITY OF ALBANY, et al.,

                Defendants.

---

**APPEARANCES:**

Clarence Delaney Jr.
17-A-0236
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508
Plaintiff pro se

**CHRISTIAN F. HUMMEL
U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER

### I. Background

Plaintiff pro se Clarence Delaney, Jr. commenced this action on October 4, 2018 against defendants City of Albany, Detective ("Det.") Brace, Det. DiGiuseppe, and John Doe police officers 1-4. See Dkt. No. 1. In a Report-Recommendation & Order dated June 20, 2019, the undersigned, in reviewing plaintiff's second amended complaint, recommended that plaintiff's (1) conspiracy claim be dismissed without prejudice and with opportunity to amend; (2) Fourth, Fifth, Fourteenth Amendment claims for improper seizure of his property be dismissed with prejudice; (3) First Amendment claim for

retaliatory arrest be dismissed without prejudice; and (4) state law defamation claim proceed. Dkt. No. 22. District Judge Hurd adopted the Report-Recommendation & Order in full and provided plaintiff an opportunity to file a third amended complaint in an attempt set forth claims of conspiracy and First Amendment retaliation. Dkt. No. 24. On August 5, 2019, plaintiff filed a third amended complaint, adding as defendants Judge Gary F. Stiglmeier, Assistant Public Defendant Meaghan Speedling, and Assistant District Attorney Brenda Baddam.[1] Dkt. No. 25. Presently pending before the Court is a review of plaintiff's third amended complaint pursuant to § 1915(e)(2)(B). Dkt. No. 17.[2]

## II. Third Amended Complaint

Plaintiff argues that defendants Albany City Court Judge Gary F. Stiglmeier, Assistant Public Defender Meaghan Speedling, Assistant District Attorney Brenda Baddam, Det. Brace, and Det. DiGiuseppe conspired against him. See generally Dkt. No. 25. First, he contends that Judge Stiglmeier dropped certain charges against him

---

[1] Plaintiff mentions Judge Stiglmeier by name in the body of the second amended complaint and references his attorney and the prosecutor without mentioning their names. Dkt. No. 17 at 6. However, plaintiff did not name any of these defendants in the caption of the second amended complaint nor set forth claims against them. Id. (noting that Judge Stiglmeier dismissed all charges relating to his arrest "to protect the defendants from testifying at plaintiff's February 7, 2019 probable hearing about the unlawful acts by plaintiff's attorney and prosecutor.").

[2] For a more detailed recitation of the facts and procedural history in this action, reference is made to the April 4, 2019, Report-Recommendation & Order and this Court's June 20, 2019, Report-Recommendation & Order, and the District Judge's adopting orders. Dkt. Nos. 15, 16, 22, 24. In those decisions, the Court concluded that the following of plaintiff's claims should proceed past the initial review stage: (1) false arrest/false imprisonment, (2) malicious prosecution, (3) state law assault/battery, (4) Monell claims against the City of Albany, and (5) excessive force; and (6) state law defamation. See id.

"as a way to protect the defendants from testifying at plaintiff's February 7, 2019 probable hearing [sic] about the unlawful acts by plaintiff's attorney and prosecutor." Dkt. No. 25 at 7. Plaintiff further contends that

> all records in the plaintiff's criminal case was [sic] inaccurate and conspiracy due to the fact that on the prosecutor's information form it stated that plaintiff stoke Makita Drills that was [sic] never discover [sic] from an individual by the name of Daniel Torres when/later on in the case it turned out that the drills that was [sic] alleging stolen belonged to an individual by the name of Stannard Todd who is believe [sic] to be defendant Detective Brace[']s personal friend or maybe relative possibly.

Id. Plaintiff further argues that "[i]t turned out to be very much a cover up (malicious prosecution) by the defendant including the prosecutor in this matter." Id.

Plaintiff also suggests that Det. DiGuiseppe specifically engaged in conspiracy[3] by denying that he seized any money from plaintiff until the February 7, 2019 probable cause hearing when plaintiff was "advised and given documents from the prosecutor dated February 6, 2019 stating that $117.00 was seized by Det. DiGuiseppe as evidence which the Judge Stiglmeir[4] Order [sic] returned back to plaintiff which the plaintiff have [sic] yet to received [sic] though the total amount seized or stolen from plaintiff was actually over $170.00." Id. at 8. It appears plaintiff is contending that DiGuiseppe's seizing of the money is "a big conspiracy and an unlaw [sic] act by the

---

[3] It is not clear to the undersigned with whom, if anyone, plaintiff is alleging DiGuiseppe was conspiring with as it relates to his seized money, but liberally construed, it is arguable that plaintiff is suggesting that DiGuiseppe conspired with Judge Stiglmeier and, potentially, Baddam. See dkt. no. 25 at 11.

[4] Elsewhere in the third amended complaint, plaintiff refers to this defendant as Judge Stiglmeier.

3

defendants." Id. at 9.[5]

Plaintiff argues that there is a conspiracy between Brace, DiGuiseppe, Speedling, Baddam "and somewhat Judge Stiglmeier due to the circumstances mention [sic] in the previous statements of the plaintiff and all the disclosure of evidence and information favorable to the plaintiff in this case was overlooked by all the defendant [sic] and not enforced by Judge Stiglmeier." Dkt. No. 25 at 11. Plaintiff elaborates that the prosecutor, Ms. Baddam, reduced the initial charges against him five days after he was initially charged, and argues that this is conspiracy because the information stated that the Makita Drills were stolen from someone named Daniel Torres "when it turned out that an individual by the name of Todd Stannard" owned the drills. Id. Plaintiff suggests that Assistant Public Defender Meaghan Speedling was "involved" in a conspiracy[6] because when plaintiff advised her of the discrepancy regarding the name of the owner of the drills, she

> not only played ignorant, but allowed the defendants time to clean up their mistake by going back to a store that I purchased items from on the light of question to retrieve video of me carrying a bag that they allege the Makita Drills were in though this was false due to the fact that plaintiff is not only a veteran of the armed forces, he also has a vendor license signed by the Albany County Sheriff [sic] Department.

Id. at 11.

---

[5] The Court dismissed with prejudice any claim relating to seizure of plaintiff's currency. Dkt. Nos. 22, 24.

[6] It is not clear to the undersigned with whom, if anyone, plaintiff is contending Speedling conspired with as it relates to her handling the alleged discrepancy of the name of the owner of the Makita drills. Read very liberally, it is possible that plaintiff is suggesting that she conspired with the police officer defendants.

4

Plaintiff also argues that defendants Speedling, Baddam, and Steiglmeier conspired insofar as he was "never called to attend" several conferences between August 9, 2019, when he was arrested, and February 7, 2019, "the day the plaintiff pled guilty to the obstruction charge." Dkt. No. 25 at 12. Plaintiff suggests that he was intentionally not informed of the conferences "to the advantage of the prosecutor and defendants which Meaghan Speedling and the Judge (Stiglmeier) allowed." Id. at 12. Plaintiff also suggests that Speedling conspired with unspecified defendants to convince him to plead guilty to the obstruction charge. Id. at 13. Specifically, he sets forth his assessment of Speedling's legal representation as support for his claim of conspiracy: "no search warrants, 911 calls, etc, the plaintiffs [sic] attorney Meghan Speedling allowed unsigned notarize [sic] without a date affidavits by alleged victims to pass through without objections." Id. at 12. Plaintiff suggests that Speedling should have investigated the authenticity of the apparently unsigned or unnotarized victim affidavits, contending that they could have been "signed by someone else maybe a police officer which plaintiff questions the authentication of the person who signed victim Torres affidavit because it could have been forged." Id.

Plaintiff further expresses his disdain with Speedling's representation insofar she "only came to visit the plaintiff twice to discuss the case" and that her questions to him "was [sic] actually biased like 'were you drunk or high on that night?' 'Did you do this or that?' and were not actually fulfilling the plaintiffs request" to assess whether there was a video of the arrest "due to the fact that plaintiff believe [sic] a camera could have been recording the incident either from the street light, the liquor store across the street, or

5

the corner store nearby." Dkt. No. 25 at 12. Plaintiff next contends that Speedling "also advised the plaintiff that he could face separate one year consecutive years in all due to the obstruction charge being filed at the precint [sic]." Id. Additionally, Speedling "[r]efused to review the whole tape during the booking incident where plaintiff was falsely charged with obstruction to government administration for refusing to be fingerprinted." Id. at 13.

Plaintiff also appears to challenge the charges with which he faced, noting that the "police report/misdemeanor complaint" described conduct that "sounds more like attempted escape" and, had Speedling "[r]eview [sic] all the recordings, she would have not only see [sic] the truth of the events that took place, but also Detective DiGuiseppe counting the currency that he seized from the plaintiff after denying to Ms. Speedling that he ever seized currency from the plaintiff, but what was stated on the complaint." Id. Plaintiff states that "[t]his was another attempt or strategy to get the plaintiff to take the offer of pleading guilty to obstruction with time serve [sic]." Dkt. No. 25 at 13. Plaintiff further argues that Speedling did not communicate to Judge Steiglmeir his desires with respect to the plea offer on the obstruction charge. Id. Plaintiff told Speedling that he would "take this offer [of pleading guilty to obstruction with time served] if the Judge drop [sic] all the other charges." Id. Instead, Speedling, Baddam, and Judge Stiglmeir "put court on hold and spoke about this matter in private in the back Room of the Court behind the Judge[']s Bench." Id.

6

### III. Review of Third Amended Complaint

Plaintiff's claim of conspiracy against defendants Brace, DiGuiseppe, Speedling, Baddam, and Judge Stiglmeier must fail for the reasons set forth below. "To survive a motion to dismiss, a conspiracy claim under 42 U.S.C. § 1983 must allege facts plausibly suggesting that (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal." Vega v. Artus, 610 F. Supp. 2d 185, 202 (N.D.N.Y. 2009) (citing Ciambriello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002) and Concepcion v. City of New York, No. 05 Civ. 8501, 2008 WL 2020363, at *5)).[7] "Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed." Vega, 610 F. Supp. 2d at 202-03. "Moreover, a Section 1983 conspiracy claim must not only allege a conspiracy, but the 'actual deprivation of constitutional rights.'" Id. at 203 (quoting Romer v. Morgenthau, 119 F. Supp.2d 346, 363-64 (S.D.N.Y. 2000)) (additional citation omitted).

Here, plaintiff does not plausibly plead a claim of conspiracy between defendants Brace, DiGuiseppe, Speedling, Baddam and Judge Stiglmeier nor any combination of these defendants. Plaintiff's claims of conspiracy are entirely conclusory and appear based on his dissatisfaction over the strategy of his attorney and outcome of his criminal proceedings. Plaintiff entirely fails to demonstrate how a plea deal or the prosecutor or judge dropping certain charges amounted to conspiracy – his bare claim

---

[7] Unpublished decisions cited within this Report-Recommendation & Order, unless otherwise noted, have been provided to plaintiff.

that defendants must have conspired to obtain a plea deal so that they did not have to testify as to their unspecified "legal acts" is without support and is without force. Similarly, plaintiff fails to explain how his attorney's – who is permitted to represent plaintiff on his behalf – meeting out of earshot with the judge and assistant district attorney amounted to conspiracy. Plaintiff does not contend that he suffered negative consequences as a result of this conference occurring outside of his hearing or how he was deprived of a constitutional right; indeed, it would appear that plaintiff received positive results as he alleges that all but one of the charges against him were dropped or will shortly be dropped, and that he was offered a plea deal. Thus, plaintiff does not plausibly allege that he suffered any kind of "agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff," as there is no unconstitutional injury plausibly alleged." Vega, 610 F. Supp. 2d at 202. Similarly, plaintiff's claim of conspiracy, insofar as he suggests that defendants collectively conspired to forge witness or victim statements, apparently to substantiate the charges against him, fails as his claim that the forms were signed by someone other than the witness/victim or is wholly conclusory and unsupported.

The remainder of plaintiff's conspiracy claims largely appear related to plaintiff's belief that defendant Speedling "conspired," apparently to convince or pressure him to plead guilty to obstruction through her insufficient or ineffective legal representation. Specifically, plaintiff argues that allegedly failed to ascertain whether there was available video evidence, failed to communicate to the Judge that he would agree to a plea to an obstruction charge if all other charges were dropped (however, as plaintiff

8

argues elsewhere in his third amended complaint, it appears that this is the plea deal he agreed to, as he alleges that all other charges were dropped), refused to view the entire tape of the booking incident which resulted in the obstruction charge, did not address plaintiff's concerns about unsigned/unnotarized victim statements, only visited plaintiff in jail on two occasions, and asked plaintiff questions that plaintiff believed to be "biased." See Dkt. No. 24.

Insofar as plaintiff argues that Speedling did not handle his case properly or in the manner in which he would have preferred, plaintiff cannot proceed with this claim under 42 U.S.C. § 1983. First, as set forth above, to set forth a claim of conspiracy, plaintiff must show "an agreement existed between two or more state actors." Vega, 610 F. Supp. 2d at 202 (emphasis added). Second, to state a claim under Section 1983, a plaintiff must allege that the challenged conduct (1) was "committed by a person acting under color of state law[,]" and (2) "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." Cornejo v. Bell, 592 F.3d 121, 127 (2d Cir. 2010) (quoting Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994) (emphasis added); see also Ciambriello v. County of Nassau, 292 F.3d 307, 323 (2d Cir. 2002) (noting that a plaintiff must set forth facts showing that a defendant was either a state actor or a private party acting under color of state law). It is well settled that " defense attorneys—even if court-appointed or public defenders—do not act under color of State law when performing traditional functions of counsel." Krug v. McNally, 488 F. Supp. 2d 198, 200 (N.D.N.Y. 2007), aff'd, 368 F. App'x 269 (2d Cir. 2010) (summary order) (citing Polk Cnty. v. Dodson, 454 U.S. 312,

9

324-25 (1981) (additional citations omitted).  Accordingly, insofar as plaintiff seeks to claim that, through her legal representation, Speedling violated unspecified constitutional rights, this claim must fail as Speedling is not a state actor nor a private person acting under the color of state law.  Similarly, insofar as plaintiff alleges that Speedling conspired with unspecified other defendants to deprive plaintiff of his constitutional rights, this claim must also fail as plaintiff cannot demonstrate that Speedling is a state actor as is required to succeed on a conspiracy claim.  Vega, 610 F. Supp. 2d at 202.

Should plaintiff feel that Speedling did not properly or sufficiently represent his interests in his criminal case, plaintiff may seek to proceed through a habeas corpus case or with malpractice charges,[8] neither of which can be done through this action. Legal malpractice claims do not arise "under the Constitution, laws, or treaties of the United States," and, thus, do not invoke federal question jurisdiction.  28 U.S.C. § 1331. Thus, for legal malpractice claims to be addressed in federal court, diversity jurisdiction must be demonstrated – the plaintiff and all defendants must be of diverse citizenship and the amount in controversy must exceed $75,000.  28 U.S.C. § 1332.  As plaintiff cannot demonstrate diversity jurisdiction as both he and Speedling, as well as the other defendants, are citizens of the State of New York, he cannot proceed on this claim.[9]  28

---

[8]  The undersigned makes no finding as to the validity of such legal malpractice claims nor whether plaintiff could succeed on these claims in the appropriate state court.  Similarly, the Court declines to reach the validity or merits of a potential habeas corpus action.

[9]  Although plaintiff does not identify Speedling's domicile for the purpose of establishing diversity jurisdiction, it can be inferred from the third amended complaint that Speedling is licensed to practice in New York State and works in this state as a public defender, leading to a reasonable conclusion that Speedling is domiciled in New York.

U.S.C. § 1332; Perpetual Sec., Inc. v. Tang, 290 F.3d 132, 136 (2d Cir. 2002). Accordingly, insofar as plaintiff's third amended complaint raises a claim of legal malpractice or ineffective assistance of counsel, it is recommended that this claim be dismissed for the reasons set forth above.

Next, insofar as plaintiff argues that Judge Stiglmeier was involved in conspiring to have charges brought against him, to get him to plead guilty to obstruction, or prevent him from timely accessing his seized currency, Judge Stiglmeier is entitled to judicial immunity. As this Court has held:

> Judges are entitled to absolute immunity for actions relating to the exercise of their judicial functions. Mireless v. Waco, 502 U.S. 9, 9–10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991). Judicial immunity has been created for the public interest in having judges who are "'at liberty to exercise their functions with independence and without fear of consequences.'" Huminski v. Corsones, 396 F.3d 53, 74 (2d Cir.2005) (quoting Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967)). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. Imbler v. Pachtman, 424 U.S. 409, 419 n. 12, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) (citing Pierson, 386 U.S. at 553–554). Judicial immunity is immunity from suit, not just immunity from the assessment of damages. Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985).

Peterkin v. Intschert, No. 7:11-CV-0661 (MAD/GHL), 2011 WL 7167056, at *4 (N.D.N.Y. Dec. 7, 2011), report and recommendation adopted, No. 7:11-CV-661 (MAD/GHL), 2012 WL 386621 (N.D.N.Y. Feb. 7, 2012); see also Collins v. Lippman, 2005 WL 1367295, at *3 (E.D .N.Y. June 8, 2005) (noting that judicial immunity applies to actions seeking monetary and injunctive relief). Here, as plaintiff's claims against Judge Stiglmeier involve the exercise of his judicial functions, he is entitled to judicial immunity. Accordingly, it is recommended that all claims against Judge Stiglmeier be

11

dismissed with prejudice.

To the extent that plaintiff may be seeking to challenge the sufficiency, legitimacy, or merit of his obstruction conviction, because plaintiff has pleaded guilty to obstruction and has been convicted of obstruction and sentenced to time served, any challenge to the obstruction conviction pursuant to section 1983 is barred by Heck v. Humphrey, 512 U.S. 477 (1994), unless he can demonstrate that he his obstruction conviction has otherwise been vacated or otherwise deemed invalid by a court of law.[10] As this Court has held:

> [A] "§ 1983 action is barred (absent prior invalidation) no matter the relief sought (damages or equitable relief) . . . if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005) (emphasis in original). If a plaintiff whose success would necessarily demonstrate the invalidity of the confinement or its duration does not satisfy Heck's "favorable termination rule," he must seek relief through the federal habeas corpus statute rather than through § 1983. Peralta v. Vasquez, 467 F.3d 98, 104 (2d Cir. 2006) ("[T]he purpose of the Heck favorable termination requirement is to prevent prisoners from using § 1983 to vitiate collaterally a judicial or administrative decision that affected the overall length of confinement, and that punishments related to their term of imprisonment, or the procedures that led to them . . . must be attacked through a habeas petition.").

Matthews v. Cty. of Cayuga, No. 5:17-CV-1004 (MAD/TWD), 2018 WL 2926271, at *4 (N.D.N.Y. Apr. 18, 2018), report and recommendation adopted, No. 5:17-CV-1004

---

[10] This is the case even though plaintiff appears to imply that he pleaded guilty due to some kind of conspiracy involving Speedling and unspecified other defendants or her improper representation. See generally Krug, 488 F. Supp. 2d at 201 (noting that the plaintiff's claim regarding his conviction was barred by Heck v. Humphry "even though Plaintiff directly contends that if it had not been for the alleged actions and conspiracy of Defendants herein, Plaintiff would not have pled guilty, [and] would not have a conviction against him . . . .").

12

(MAD/TWD), 2018 WL 2926272 (N.D.N.Y. June 8, 2018). Because his claims relating to his obstruction charge – false arrest, false imprisonment, and malicious prosecution – call into question the validity of his conviction for obstruction, they are barred by Heck. Id. (quoting McFadden v. New York, 10-CV-141 (RRM/CLP), 2011 WL 6813194, at *4 (E.D.N.Y. Dec. 28, 2011) ("[c]laims for both false arrest and malicious prosecution both call into question the validity of a conviction, because false arrest requires a lack of probable cause and malicious prosecution requires probable cause and a termination of the proceedings in the defendant's favor."). Accordingly, insofar as plaintiff appears to set forth claims relating to his obstruction charge, including false arrest, false imprisonment, and malicious prosecution, it is recommended that those claims be dismissed without prejudice.

In review of the second amended complaint, the Court interpreted the pleading as attempting to set forth a claim for First Amendment retaliatory arrest against defendant DiGuiseppe. Dkt. No. 22 at 15. The Court dismissed that claim without prejudice and with opportunity to amend as plaintiff's second amended complaint had "not adequately demonstrate[d] the elements of a retaliatory arrest claim." Id. at 16. The Court observed that plaintiff alleged that "DiGuiseppe arrested him because of prior complaints and/or 'problems,' . . . there is no indication that plaintiff stopped filing lawsuits and/or complaints against Det. DiGiuseppe or that his speech was otherwise 'actually chilled.'" Id. Plaintiff's third amended complaint fails to set forth a plausible claim for retaliatory arrest in violation of the First Amendment. Plaintiff contends that he "has had problems with Detective DiGuiseppe previously in the past and have settled

13

twice in civil cases against other police officers." Dkt. No. 25 at 9. However, plaintiff fails for the same reasons that this claim failed in the second amended complaint. Dkt. No. 22 at 16. Plaintiff's third amended complaint fails to set forth any other facts and claims contending that he had an interest protected by the First Amendment, that defendant's actions were motivated or substantially caused by his exercise of that right, or that defendants' actions effectively chilled the exercise of his First Amendment rights. Id. As the Court observed in its June 20, 2019, Report-Recommendation & Order, the opposite appears to be true as "there is no indication that plaintiff stopped filing lawsuits and/or complaints against Det. DiGiuseppe or that his speech was otherwise 'actually chilled.'" Id. Indeed, plaintiff has commenced this action[11] against DiGiuseppe and others and indicates that "the City and Chief of Police was [sic] informed by the plaintiff through a complaint by letter and through the Civilian Complaint Review Board and plaintiff also filed a notice of intent to sue with the Corporation Counsel . . . ." Dkt. No. 25 at 8. Accordingly, it is recommended that insofar as plaintiff attempts to set forth a claim for retaliatory arrest in violation of the First Amendment, such claim be dismissed with prejudice.

### IV. Conclusion[12]

---

[11] As the June 20, 2019 Report-Recommendation & Order notes, plaintiff also filed Delaney v. City of Albany, 1:18-CV-1259 (LEK/ATB), 2019 WL 125769 (N.D.N.Y. Jan. 7, 2019), wherein he also sued defendant DiGuiseppe.

[12] Plaintiff has not identified the Doe defendants. Under the Federal Rules of Civil Procedure, a defendant must be served with the summons and complaint within 120 days after the filing of the complaint. FED. R. CIV. P. 4(m). This 120-day service period is shortened, or "expedited," by the Court's Local Rules of Practice (and the Court's General Order 25), which provide that all defendants must be

**WHEREFORE**, for the reasons set forth herein, it is hereby

**RECOMMENDED**, that plaintiff's conspiracy claim be **DISMISSED IN ITS ENTIRETY WITH PREJUDICE** as alleged against all defendants; and it is further

**RECOMMENDED**, that insofar as plaintiff attempts to set forth claims against Meaghan Speedling for her legal representation, including ineffective assistance of counsel or legal malpractice, those claims be **DISMISSED IN THEIR ENTIRETY WITH PREJUDICE**, but that (1) the dismissal of the ineffective assistance of counsel claim be without prejudice to plaintiff's seeking to commence a habeas corpus case, should he choose do to so, and (2) the dismissal of his legal malpractice claim be without prejudice to plaintiff's seeking to address those claims in the appropriate state court should he choose to do so; and it is further

**RECOMMENDED**, that Assistant Public Defender Meaghan Speedling be added to the docket by the Clerk fo the Court and thereafter **terminated** from this action because plaintiff has failed to demonstrate that she is a state actor for purposes of 42 U.S.C. § 1983 and has otherwise failed to state a claim against her; and it is further

**RECOMMENDED**, that, insofar as plaintiff attempts to set forth claims for malicious prosecution or false arrest as it relates to his conviction for obstruction, these claims be **DISMISSED IN THEIR ENTIRETY WITHOUT PREJUDICE** as barred by

---

served with the summons and complaint within 60 days of the filing of the complaint. N.D.N.Y. L.R. 4.1(b). Plaintiff is advised that he must take reasonable steps through discovery to identify, name, and (after seeking permission to amend in order to identify the names of the John Doe defendants),serve the John Doe Defendants or his claims against them may be subject to dismissal.

Heck v. Humphrey[13]; and is further

**RECOMMENDED**, that, insofar as plaintiff attempts to set forth claims for retaliatory arrest in violation of the First Amendment against defendant DiGuiseppe, this claim be **DISMISSED WITH PREJUDICE**; and it is further

**RECOMMENDED**, that the Clerk of the Court add Judge Gary F. Stiglmeier to the docket and that he thereafter be **terminated** from this action due to judicial immunity; and it is further

**RECOMMENDED**, that, as plaintiff was permitted to file a third amended complaint solely to attempt to cure the defects in his conspiracy and First Amendment charges, and because plaintiff has failed to cure these defects, it is recommended that the second amended complaint (dkt. no. 17) be deemed the operative pleading in this action, and it is further

**RECOMMENDED**, that, should the District Judge adopt this Report-Recommendation & Order in its entirety, the Clerk of the Court return this case to the Magistrate Judge for issuance of service of the second amended complaint (dkt. no. 17) on the remaining defendants as the operative pleading; and it is

**RECOMMENDED**, that the Clerk of the Court add Assistant District Attorney Brenda Baddam to the docket as a defendant, and it is

**ORDERED**, that the Clerk of the Court serve this Report-Recommendation & Order on all parties in accordance with Local Rules; and it is further

---

[13] As the Court held in its prior decisions, plaintiff's false arrest/false imprisonment claims were permitted to proceed as it relates to the remaining charges. This recommendation does not seek to alter that determination. See Dkt. Nos. 22, 24.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 6(e), 72.[14]

Dated: December 16, 2019
Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[14] If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

17